FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 15 2012

JAMES W. McCORMACK, CLERK
By: _____
          DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| OJSC TNK-BP HOLDING | PLAINTIFF |
| vs.    Case No. 4:12 cv 512 JMM | |
| ROYCHAMP TRADING LLC, AN ARKANSAS LIMITED LIABILITY COMPANY | DEFENDANT |

## BRIEF IN SUPPORT OF MOTION TO RECOGNIZE AND ENFORCE FOREIGN FREEZING INJUNCTION

I. **INTRODUCTION AND OVERVIEW.**

OJSC TNK-BP Holding ("HOLDING") moves this Court to recognize and to enforce a freezing injunction entered by the High Court of Justice in London, England. HOLDING filed its action in England against Defendant Roychamp Trading LLC ("ROYCHAMP"), Igor Lazurenko and other entities related to or controlled by Mr. Lazurenko, Claim No: HC12B03162, (hereinafter referred to as "the English fraud action"). A copy of the Claim Form and Particulars of Claim filed in the English fraud action is attached to HOLDING's Complaint as Exhibit 1. As detailed therein, Mr. Lazurenko abused his authority as a managerial employee and an agent of HOLDING to illegally divert millions of dollars in funds belonging and/or due to HOLDING to Mr. Lazurenko or to third parties that he controlled.

HOLDING contends that all property or sums held by ROYCHAMP (as well as the other defendants) are the proceeds of funds fraudulently misappropriated from HOLDING, which should be held in constructive trust for the benefit of HOLDING. HOLDING intends to pursue to complete resolution its claims for relief against ROYCHAMP and the other entities in the English court. However, absent the assistance of this Court, a serious threat exists that

ROYCHAMP's assets will be dissipated and thus, the efforts in the English Court will be for naught.

On Monday, August 13, 2012, HOLDING applied for a freezing injunction in the English action. A copy of the Outline Submissions of the Claimant ("Outline for Freezing Injunction") lodged in the English fraud action is attached to the motion accompanying this brief as Exhibit A. For the benefit of the Court, HOLDING has also attached the documentation presented to the Court with its request for the freezing injunction. The three affidavits of Craig Deuchrass, with supporting documents, are attached to HOLDING's motion as Exhibits B-D.

As part of its application, HOLDING specifically requested that the English court exercise its discretion to permit HOLDING to seek "mirror orders" abroad. HOLDING also presented "good cause" for the initial entry of the freezing injunction without notice.[1]

On the same day, Monday, August 13, 2012, HOLDING appeared, through counsel, in the English fraud action for the purpose of presenting its case for the entry of a freezing injunction. After the hearing, the English court granted the request and entered the freezing injunction against ROYCHAMP, Mr. Lazurenko and other entities. A copy of the freezing injunction entered in the English action is attached to HOLDING's motion as Exhibit E. The English court specifically granted HOLDING permission to seek to enforce this order in Arkansas.[2]

Attached to HOLDING's motion as Exhibit F is a copy of the transcript from the proceedings before The Honorable Justice Sales, who presided over the August 13th hearing. At the conclusion of the hearing, Justice Sales ruled:

---

[1] Outline for Freezing Injunction, Exhibit A to motion at pp. 14-17.
[2] Freezing Injunction, Exhibit E to motion, at p. 7, Schedule B (7).

> At this late hour, I think it suffices to say that on the basis of the extensive evidence that has been put before me, I am satisfied that the claimant has a good arguable case, in particular against the second defendant, by involvement in what appears to be on a good arguable case basis involvement in a conspiracy with him and the other defendants, for diversion of funds of about 64 million euros from the claimant to the second defendant and those acting with him...
> There is also a history of what appears to be deception and fraud on the part of the second defendant in concealing the sources for the investments in the Montenegrin properties, which also support that inference...
> I am also satisfied that there is a real risk of dissipation of assets by the defendants if they are not injuncted and, indeed, if they were put on notice of this application. Essentially, the basis for that is the evidence of the ongoing fraud in relation to the claimant to which I have referred and the evidence of involvement of each of them in assisting in carrying on that fraud and concealing that from the claimant. In the circumstances, I am satisfied that it is appropriate for this application to have been made without notice and in private. I am satisfied that it is appropriate for a freezing injunction to be granted against each of them.[3]

HOLDING seeks an order from this Court recognizing and enforcing the freezing injunction entered by the English Court. The recognition and enforcement of the English order is supported by principles of comity and is necessary in this case to preserve assets and maintain the status quo pending a final judgment by the English court. The requested relief is within this Court's inherent equitable power. Accordingly, this Court should recognize and enforce the freezing injunction entered by the English court.

II.  **FACTUAL BACKGROUND.**

<u>Other litigation in England involving ROYCHAMP and Mr. Lazurenko</u>

In addition to the English fraud action, ROYCHAMP's minority owner, Caldero (which is owned by Mr. Becirovic) is pursuing separate litigation in England to wind up the affairs of BJUK, an English company which Mr. Lazurenko incorporated in 2001 (hereinafter referred to as "the English liquidation proceeding"). BJUK is the registered owner of 100% of the shares in

---

[3] Transcript, Exhibit F, at pp. 67-69.

Beppler & Jacobsen Montenegro D.O.O. ("BJM").  BJUK is currently in provisional liquidation. HOLDING and Mr. Lazurenko are both parties to the English liquidation proceeding.[4]

The presiding judge in the English liquidation proceeding has already entered an injunction against Mr. Lazurenko and others to protect against the dissipation of the assets of BJUK, which includes two luxury hotels, the Avala and Bianca, located in Montenegro.[5] The current value of the two hotels is estimated to be in excess of $150,000,000.00.[6]

The injunctive relief granted in the English liquidation proceeding does not prevent Mr. Lazurenko (either personally or through one of his agents) from acting in a way to dissipate or deal adversely with the property owned by ROYCHAMP in Montenegro or to alter the ownership of ROYCHAMP.[7]

Mr. Lazurenko's Fraud and ROYCHAMP's involvement

After learning of facts which suggested fraud on the part of Mr. Lazurenko, HOLDING launched an internal investigation.  During one meeting, Mr. Lazurenko admitted wrongdoing and agreed to make recompense by transferring two properties in Moscow or by paying their cash equivalent valued at $8,000,000.00.  Although a written agreement was prepared, Mr. Lazurenko never signed it and no monies have been paid to HOLDING.[8]  It is believed that Mr. Lazurenko fled Russia in late April or early May 2012.  He is believed to be living in London, England, but his specific whereabouts are unknown.[9]

---

[4] Deuchrass First Affidavit, Exhibit B to motion at ¶¶ 28-34;  Mr. Egorov witness statement at ¶ 6.
[5] See www.avalaresort.com and www.biancaresort.com.
[6] Deuchrass First Affidavit, Exhibit B at ¶¶ 22.1, 35.
[7] Deuchrass First Affidavit at ¶ 35-37.
[8] Particulars of Claim, Exhibit 1 to Complaint at ¶¶ 27-28.
[9] Particulars of Claim, Exhibit 1 to Complaint at ¶ 30;  Deuchrass First Affidavit, Exhibit B to motion at ¶¶ 17-19.

The funds Mr. Lazurenko misappropriated from HOLDIING were funneled through an elaborate web of entities and individuals to invest in assets and property located in Russia and in Montenegro. The assets in Montenegro include hotels, land, and a now defunct newspaper.[10]

ROYCHAMP is one of several offshore vehicles used by Mr. Lazurenko to acquire land in Montenegro using stolen funds belonging to HOLDING. ROYCHAMP is the 100% owner of ROYCHAMP Trading Montenegro D.O.O., a Montenegrin company which is the registered owner of land in Montenegro. The current estimated value of the land owned by ROYCHAMP in Montenegro is in excess of $25,000,000.00.[11]

ROYCHAMP's minority owner, Caldero, is owned by Mr. Becirovic. Mr. Becirovic was also involved with Mr. Lazurenko in developing hotel properties in Montenegro. The relationship between Mr. Becirovic and Mr. Lazurenko eventually broke down, in part because of suspicions on the part of Mr. Becirovic regarding the true source of the funding for their hotel projects. Mr. Lazurenko had represented that he was acting as the agent for Mr. Khan, a prominent Russian businessman, and that Mr. Khan was the funding source. Mr. Becirovic approached TNK-BP in September of 2011, which in turn prompted a subsequent internal investigation, revealing the fraud.[12]

Thus, Caldero's interests as a minority owner of ROYCHAMP are adverse to those of ROYCHAMP's majority owner. HOLDING is authorized to represent to this Court that Caldero does not object to, and in fact joins in HOLDING's request to recognize and to enforce in Arkansas the freezing injunction entered in England.

---

[10] Deuchrass First Affidavit, Exhibit B at ¶¶ 22-23.
[11] Particulars of Claim, Exhibit 1 to Complaint at ¶¶ 11, 41(i), and 45; Deuchrass First Affidavit, Exhibit B to motion at ¶ 22.5.
[12] Particulars of Claim at ¶ 41-43.

The ownership structure of ROYCHAMP mirrors the ownership structure of BJUK, with Caldero owning twenty-five percent (25%) plus one share of BJUK.[13] Similarly, Mr. Lazurenko and Mr. Becirovic agreed to play the same roles with respect to both ROYCHAMP and BJUK. Mr. Lazurenko, allegedly through Mr. Khan, would provide the funding; Mr. Becirovic would provide the sweat equity. This is further evidence that ROYCHAMP, like BJUK, is an entity created and controlled by Mr. Lazurenko.

<u>Risk of dissipation of assets</u>

Recently, efforts were made to transfer the majority ownership interest in ROYCHAMP from Prokurations-Anstalt to an unknown entity without Caldero's knowledge or consent. Efforts were also made to appoint an unknown director of ROYCHAMP without Caldero's knowledge or consent. As described in detail in Mr. Deuchrass's First Affidavit, ¶¶ 39-48, Caldero has, to date, been able to prevent such unilateral changes in ownership, which arguably are contrary to the requirements of Arkansas law imposed on limited liability companies, but only by threat of legal action.

These recent efforts to change the ownership interest of ROYCHAMP, along with other occurrences more particularly described in Mr. Deuchrass's affidavit, "all point strongly to a continuing risk of dissipation of assets" by ROYCHAMP and the other defendants controlled by Mr. Lazurenko.[14]

Unless the English freezing injunction is enforced in Arkansas, Mr. Lazurenko and his associates will remain free to attempt to use the defendant ROYCHAMP to conceal, move or hide assets which should remain available to satisfy any Judgment entered in the English fraud action.

---

[13] Deuchrass First Affidavit at ¶¶ 2, 7.
[14] Deuchrass Affidavit at ¶ 86.

### III. AUTHORITY AND ANALYSIS.

The jurisdiction of this Court is based on diversity jurisdiction. The enforceability of a foreign judgment before this Court is, therefore, governed by Arkansas law. *Toronto-Dominion Bank v. Hall*, 367 F. Supp. 1009, 1012 (E.D. Ark. 1973). No reported Arkansas appellate court decision, however, has addressed the enforceability of a foreign judgment. The court in *Toronto-Dominon Bank*, in predicting how the Arkansas Supreme Court would address the issue, found that the starting point would be the U.S. Supreme Court's decision in *Hilton v. Guyot*, 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895). The general rule laid down in *Hilton* is as follows:

> When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that, by the principles of international law, and by the comity of our own country, it should not be given full credit and effect.

159 U.S. at 205-06.

The majority in *Hilton* went on to hold that a foreign judgment would not be given conclusive effect unless the courts of the rendering country would give the same effect to a comparable judgment of a United States court. 159 U.S. at 210. Since the French courts would not give conclusive effect to a similar United States judgment, the majority held that such effect could not be given to the French judgment in suit. This "reciprocity requirement" has been sharply criticized, notably by Dr. Robert A. Leflar, and has been rejected by numerous courts. *Toronto-Dominon Bank*, 367 F. Supp. at 1013. Based on the lack of support of the "reciprocity

requirement" and in light of Dr. Leflar's position on the matter, the court in *Toronto-Dominon Bank* held that the Supreme Court of Arkansas would not impose reciprocity as a condition to giving conclusive effect to a foreign judgment. *Id.* at 1013-14.

In *Toronto-Dominon Bank* an action was brought against a citizen of Arkansas in Ontario, Canada, and a judgment was rendered against the Arkansas citizen. 367 F. Supp. at 1010. In the action brought in the United States District Court to enforce the judgment, the district court had "no difficulty" in finding that the Canadian judgment met the basic requirements laid down in *Hilton*. *Id.* at 1014. The court held that the Supreme Court of Ontario was a court competent to render the judgment; it had jurisdiction of the cause and the parties; the defendant had an opportunity to defend the case; the proceedings were according to the course of a civilized jurisprudence; and the proceedings were stated in a clear and formal record. *Id.* The requirements met in *Toronto-Dominon Bank* are likewise met in the present action.

### a. The freezing injunction from the English court satisfies the requirements for enforcement of a foreign order.

The basic requirements laid out in *Hilton* are met in this case. The freezing injunction was rendered by the High Court of Justice in London, England, a competent court. The English Court has jurisdiction over the cause of action and the parties. Plaintiff HOLDING is a Russian Holding Company that has brought suit in the English Court against various defendants, including Igor Lazurenko, a Russian citizen now believed to be residing in England, and various corporations used by Mr. Lazurenko as part of a long running fraud against HOLDING. One such corporation, BJUK, is an English company incorporated by Mr. Lazurenko. The defendant in this case, ROYCHAMP, is another such corporation, of which Mr. Lazurenko is the ultimate beneficial owner, controlling mind, and de facto director.

The allegations against Mr. Lazurenko and his corporate entities, including ROYCHAMP, have been properly filed and supported by proof. The English Court is taking all necessary steps to ensure all defendants have notice of the suit and the opportunity to defend. The English proceedings are being served upon ROYCHAMP by delivering them, in person or by U.S. mail, to ROYCHAMP's registered office in Arkansas. The English freezing order further provides that ROYCHAMP has the right to apply to the English court to vary or discharge the freezing order.[15] ROYCHAMP, therefore, will properly have notice of the suit and the opportunity to defend.

The proceedings in England are being carried out according to the course of a civilized jurisprudence. The question of whether England has a civilized legal system requires no evidence, because that "question is not open to doubt." *The Society of Lloyd's v. Ashenden*, 233 F.3d 473, 477 (7th Cir. 2000). In *The Society of Lloyd's*, Judge Posner found that "[a]ny suggestion that [the English] system of courts does not provide impartial tribunals or procedures compatible with the requirements of due process of law borders on the risible." *Id.* at 476. "The courts of England are fair and neutral forums." *Id.* (citing *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992)). The court further noted that "[t]he origins of our concept of due process of law are English, . . . and the English courts . . . are highly regarded for impartiality, professionalism, and scrupulous regard for procedural rights." *Id.* (internal citations omitted). "The English judicial 'system . . . is the very fount from which our system developed; a system which has procedures and goals which closely parallel our own.'" *Id.* (citing *In re Hashim*, 213 F.3d 1169, 1172 (9th Cir. 2000), quoting *Somportex Ltd. v.*

---

[15] Freezing Injunction, Exhibit E to motion at ¶ 13.

*Philadelphia Chewing Gum Corp.*, 318 F. Supp. 161, 166 (E.D. Pa. 1970), aff'd, 453 F.2d 435 (3d Cir. 1971)).

The proceedings are also stated and will continue to be stated in a clear and formal record. As seen in the attached proceedings, the record in the English court contains clear and formal pleadings and orders. The freezing injunction entered by the English court, therefore, meets the requirements for the recognition and enforcement of a foreign order.

### b. Preliminary orders preserving assets are enforceable.

While the freezing injunction entered by the English court is not a final judgment, this preliminary order should be recognized under the same principles for recognition of a final foreign judgment. Generally, non-final or interlocutory orders of foreign courts are not entitled to the same recognition and enforcement as final judgments. *Cardenas v. Solis*, 570 So. 2d 996, 998 (Fl. Ct. App. 1990). An exception to this general rule applies, however, when the foreign order protects a creditor in collecting on a valid debt. *Id.* at 999 (finding that "debtors abroad ought not be able to walk away from their foreign court-imposed obligations by spiriting away their money or assets to the United States"); *Cochrane v. Nwandu*, 855 So. 2d 1276, 1277 (Fl. Ct. App. 2003) (recognizing and enforcing English injunction enjoining defendant from disposing of certain assets); *Intrinsic Values Corp. v. Superintendencia de Admnistracion Tributaria*, 806 So. 2d 616, 619 (Fl. Ct. App. 2002) (holding the trial court's temporary injunction was properly entered based on the principles of comity to render effective the Guatemala injunction and to preserve the status quo pending a final decree of the Guatemala court); *Lasry v. Lasry*, 180 A.D.2d 488, 488 (N.Y. App. Div. 1992) (refusing to vacate a Swiss court's injunction freezing the defendant's bank account based upon considerations of comity and to preserve assets).

Authority further exists for enforcing foreign injunctions entered *ex parte*, especially when such enforcement is necessary to protect assets from disposition. In *Cardenas, supra,* the

Guatemalan Family Court entered an ex parte injunction freezing the defendant's bank accounts in Guatemala and Miami, Florida. 570 So. 2d at 997. The plaintiff in that action then filed a complaint for injunctive relief in Florida to enforce the foreign decree pursuant to the law of international comity. *Id.* Based on that Guatemalan ex parte order, the plaintiff sought a temporary injunction against the defendant's bank accounts. *Id.* The circuit court granted a temporary injunction on an ex parte basis, and later, after a full hearing, modified the injunction to freeze one-half of the funds in the subject bank accounts. *Id.* On appeal, the Florida Court of Appeals upheld the circuit court's enforcement of the Guatemalan temporary injunction under comity principles. *Id.* at 999. In doing so, the court held that "[a]lthough the subject injunction was issued ex parte based on the plaintiff's moving papers, this is not unknown under our law provided, as here, a reasonably prompt hearing is accorded to the defendant thereafter." *Id.* The freezing order in England in the present case likewise provides for a prompt hearing for ROYCHAMP to enter and defend the English claim.

The preliminary freezing injunction from the English court is necessary to preserve assets and maintain the status quo until a final judgment can be entered. If the freezing injunction is not recognized and enforced in Arkansas, Mr. Lazurenko will be able to transfer and liquidate assets in ROYCHAMP, depleting assets that could ultimately be subject to a final judgment by the English court. The injunction entered in England was granted using a similar procedure as would have been applied by this Court, with prompt notice and a reasonably prompt hearing accorded to ROYCHAMP after the initial entry of the freezing order, *ex parte*. This Court should, therefore, recognize and enforce the English freezing injunction on the same terms and conditions as the English Court.

  c. **This Court has the inherent authority to enforce the freezing injunction independently from recognizing the English order.**

The requested relief, enforcement of a freezing injunction, is within this Court's inherent equitable power, independent of recognition of a foreign judgment. A United States District Court may enter an injunction freezing assets when a party has demonstrated an equitable claim to the assets frozen. *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1160, (D.C. Cir. 2007) (*citing Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 332-33, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999)); *see also Robertson v. Cartinhour*, 420 Fed. App. 1, 2 (D.C. Cir. 2011) (affirming district court's entry of preliminary injunction enjoining defendant from dissipating assets and requiring transfer of monies into the registry of the court). HOLDING has already demonstrated to the satisfaction of the English court that it has an equitable claim to the assets misappropriated by Mr. Lazurenko and placed in the name of ROYCHAMP. Thus, HOLDING is not asking this Court to do anything that it would not have the power to do on its own, had this case been filed initially in the United States, rather than in England.

The evidence presented in the English action, if submitted to this Court, would justify the same relief granted by the English court. However, HOLDING should not have to litigate its claims in multiple forums but should be permitted to rely on principles of comity to have this Court recognize the validity of the English injunction and to enter a similar injunction against ROYCHAMP. Thus, this proceeding should be focused on assessing the fundamental fairness of the process used to generate the freezing injunction to be enforced, rather than forcing HOLDING to relitigate its claims for relief against ROYCHAMP. To do otherwise would be to force HOLDING to litigate the same claims in multiple forums.

## IV. CONCLUSION.

For the foregoing reasons, this Court should, by the principles of international law, and by the comity of our own country, recognize and enforce the freezing injunction entered by the English court.

Respectfully submitted,

KEVIN A. CRASS  (84029)
EDIE R. ERVIN  (93198)
PHILLIP M. BRICK, JR. (2009116)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas  72201-3522
(501) 376-2011
Crass@fridayfirm.com
EErvin@fridayfirm.com
PBrick@fridayfirm.com

Attorneys for Plaintiff,
OJSC TNK-BP HOLDING

By: _____
KEVIN A. CRASS

## CERTIFICATE OF SERVICE

    I, Kevin A. Crass, hereby certify that a copy of the foregoing has been served upon the following Defendant on this 15th day of August, 2012:

Mr. G. Robert Hardin
As Registered Agent for Service for
Roychamp Trading LLC
500 Main Street, Suite "A"
North Little Rock, Arkansas 72114

_/s/ Kevin A. Crass_
Kevin A. Crass